No. 120,417

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER HAYES,
*Appellant*.

SYLLABUS BY THE COURT

1.

To determine whether someone has a reasonable expectation of privacy under K.S.A. 2019 Supp. 21-6101(a)(6) we consider (1) whether the person subjectively believes he or she has an expectation of privacy in the situation and (2) whether a reasonable person in the same or similar circumstances would have an expectation of privacy. The answers to these questions are highly fact specific.

2.

A person violates K.S.A. 2019 Supp. 21-6101(a)(6) if the person independently conceals any of the recording devices listed in the statute or if the person conceals him or herself while using one of the listed recording devices to secretly record a person as prohibited by the statute.

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed March 6, 2020. Affirmed.

*Hope E. Faflick Reynolds*, of Kansas Appellate Defender Office, for appellant.

1

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL and GARDNER, JJ.

ARNOLD-BURGER, C.J.: Christopher Hayes filmed one of his neighbors, A.W., through her window, in a state of undress. It was dark outside, some lights were on inside, and A.W.'s blinds were up on one of her windows. Hayes made the recording without A.W.'s knowledge or permission. The State charged Hayes with breach of privacy. During his trial the district court allowed the State to present evidence that Hayes bought a SPYTEC video watch. There was no dispute that Hayes did not use the watch to film A.W. Additionally, the court allowed the State to present evidence that neighbors had observed Hayes looking into their windows.

A jury convicted Hayes of breach of privacy. On appeal, Hayes argues there was insufficient evidence to support the conviction, the district court erred in admitting certain evidence, and the court violated his right to a fair trial by using an erroneous jury instruction and placing guilty before not guilty on the verdict form. Finding no error, we affirm.

FACTUAL AND PROCEDURAL HISTORY

In early 2017, Shawna Prigmore and Hayes were married. At the time, Prigmore was suspicious of some of Hayes' behavior. For instance, Hayes would take their dogs on walks that took much longer than anticipated and Prigmore could not find Hayes when she tried to do so. At some point, Prigmore told Hayes that she wanted to see his phone. Hayes gave Prigmore his phone and Prigmore noticed that Hayes had logged into Facebook under the name John Davidson.

2

Prigmore asked Hayes about the identity of John Davidson. In response Hayes said, "'You caught me. Divorce me.'" Prigmore told Hayes to write down all of his account usernames and passwords and he did. Later that day, Prigmore signed into the accounts and found an email that included an attachment of a woman laying topless on a bed. Prigmore contacted the police to report what she had found.

Detective Troy Bussard with the Wichita Police Department located the woman in the video, A.W., who lived near Hayes when the video was recorded. A.W. told Detective Bussard that she did not give anyone permission to film her. Based on that information, the State charged Hayes with breach of privacy and alleged that the crime was sexually motivated.

A.W. testified at trial that she and Hayes lived near each other in a gated, secured access community. A.W. viewed the video that Prigmore found and identified herself as the woman in the video. A.W. testified that she did not know the video was being filmed and did not give anyone permission to film her. According to A.W., while she was being filmed, she was laying on her bed wearing only her underpants, reading her Kindle, and likely watching television.

A.W. stated that she considered her home to be a private space, somewhere where she could "escape from the outside world." According to A.W., if she were to stand outside her window she could not see into the house. But A.W. acknowledged that someone taller than her *may* be able to see in, but she reiterated that the window was a "high-up" window. The photograph presented to the jury shows a window, the bottom of which appears to be about 6 feet off the ground. Although the complex does not allow residents to park in the area, they all have access to it via a large parking area between it and another unit. A.W. acknowledged that the bedroom window's blinds were pulled up when the video was recorded.

3

Hayes did not present any evidence at trial. In closing arguments, Hayes argued, in part, that there was insufficient evidence to show that A.W. had a reasonable expectation of privacy because the blinds on her window were up when he recorded the video.

The jury found Hayes guilty of breach of privacy and found that the crime was sexually motivated. Hayes timely appeals.

Additional facts will be added as necessary.

ANALYSIS

*There was sufficient evidence to support Hayes' conviction.*

Hayes first argues that there was insufficient evidence to support his conviction because (1) A.W. did not have a reasonable expectation of privacy in her bedroom and (2) there was no indication that he recorded A.W. using a concealed device.

*We examine our standard of review.*

"'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

But this case also involves statutory interpretation—the meaning of the words used in the breach of privacy statute—K.S.A. 2019 Supp. 21-6101(a)(6). Interpretation of a statute presents a question of law over which appellate courts have unlimited review. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019). The most fundamental rule of

4

statutory construction is that the intent of the Legislature governs if we can determine that intent. *State v. LaPointe*, 309 Kan. 299, 314, 434 P.3d 850 (2019).

The State charged Hayes with breach of privacy, as defined by K.S.A. 2014 Supp. 21-6101(a)(6).

"Breach of privacy is knowingly and without lawful authority:

. . . .

"(6) installing or using a *concealed* . . . camera of any type, to secretly . . . film . . . or record by electronic or other means, another, identifiable person under or through the clothing being worn by that other person or another, identifiable person who is nude or in a state of undress, for the purpose of viewing the body of, or the undergarments worn by, that other person, without the consent or knowledge of that other person, with the intent to invade the privacy of that other person, under circumstances in which the other person has a *reasonable expectation of privacy*." (Emphases added.) K.S.A. 2014 Supp. 21-6101(a).

The statute does not define "concealed" or "reasonable expectation of privacy," the only two provisions raised by the parties here. See K.S.A. 2019 Supp. 21-6101.

Hayes argues that A.W. did not have a "reasonable expectation of privacy" and that the phone he used to record A.W. was not "concealed" as the statute required.

*There was sufficient evidence for a jury to conclude that A.W. had a reasonable expectation of privacy in her bedroom.*

The breach of privacy statute requires that the person whose privacy was breached had a "reasonable expectation of privacy" under the circumstances. K.S.A. 2019 Supp. 21-6101(a)(6). Hayes argues that—as a matter of law—A.W. did not have an expectation

5

of privacy because her blinds were up. So we turn first to the meaning of a "reasonable expectation of privacy" as used in the statute.

Kansas courts have not addressed the phrase "reasonable expectation of privacy" as it is used in K.S.A. 2019 Supp. 21-6101(a)(6). So we look to cases that involve similar issues or statutes that involve a similar analysis to see if we can draw any parallels to aid us in interpreting the meaning of this statutory phrase.

Hayes argues that we should look at this court's decision in *State v. Kowalewski*, No. 108,943, 2013 WL 5925967 (Kan. App. 2013) (unpublished opinion), for guidance. In *Kowalewski*, a panel of this court addressed what constitutes a "private place" as used in K.S.A. 2012 Supp. 21-6101(a)(3). 2013 WL 5925967, at *1. We held that a private place is a place where a "person may reasonably expect to be safe from surveillance or uninvited intrusion." 2013 WL 5925967, at *1.

The State charged Kowalewski with breach of privacy, for "entering with intent to listen surreptitiously to private conversations *in a private place* or to observe the personal conduct of any other person or persons *entitled to privacy therein*" under K.S.A. 2012 Supp. 21-6101(a)(3). (Emphases added.) 2013 WL 5925967, at *3. The victim discovered Kowalewski looking into her window with his face up against the window pane. To look into her window Kowalewski walked up the woman's steps, moved to the side of the house, and stepped onto a concrete slab so that he could look through the window which was 5 to 6 feet off the ground.

On appeal, Kowalewski argued the State failed to prove that he was in a private place. This court held that the area Kowalewski was standing in was a private place because it was reasonable to expect that no one will stand at the side of your home and stare into your living room. The court dismissed Kowalewski's argument that this interpretation would lead to the criminalization of lots of ordinary conduct, such as the

6

conduct of a person who can see through his or her neighbor's windows. The court reasoned that Kowalewski's argument overlooked the requirement that the violator must have entered the area to observe the personal conduct. If a person can see into the house next door, that is merely incidental to living in his or her place of residence. The court noted that

> "to the extent that one's windows are without blinds or curtains and a neighbor is easily able to see in, the resident may not 'reasonably expect to be safe' from surveillance by the neighbor. The same is true with regard to passers-by on the street if you leave the blinds or curtains open on the front window to your house." 2013 WL 5925967, at *3.

But ultimately that situation did not apply to Kowalewski because he entered his neighbor's property and the neighbor had "a reasonable expectation that no one would be peering in the window on the side of her house from a standing position immediately next to the house." 2013 WL 5925967, at *4. Here, the video makes it abundantly clear that Hayes is positioned right next to A.W.'s window, not in the general common area where people would typically walk.

Together with *Kowalewski*, Hayes argues that this court should consider Fourth Amendment jurisprudence when considering what constitutes a reasonable expectation of privacy. He argues that "no Fourth Amendment search occurs where a law enforcement officer observes incriminating evidence or unlawful activity from a nonintrusive vantage point." *State v. Fisher*, 283 Kan. 272, 293, 154 P.3d 455 (2007). Likewise, under Fourth Amendment caselaw, "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). So since Hayes was simply looking through the window from a nonintrusive vantage point, it could not be a breach of A.W.'s privacy.

7

While general concepts used in Fourth Amendment cases may be illustrative, the Fourth Amendment seeks to protect citizens from unreasonable searches and seizures by the government. See *State v. Dugan*, 47 Kan. App. 2d 582, 587, 276 P.3d 819 (2012); see also *McCormick v. City of Lawrence*, 278 Kan. 797, 799, 104 P.3d 991 (2005). But this case does not involve a governmental search and whether police officers unreasonably searched A.W.'s home or could have used their observations of her to obtain a search warrant if they publicly observed criminal activity. The Fourth Amendment is distinct from the right to privacy. It "protects individual privacy against certain kinds of governmental intrusion, but its protections go further, and often have nothing to do with privacy at all." *Katz*, 389 U.S. at 350. Instead, this court must determine whether A.W. had a reasonable expectation of privacy from the prying eyes of her neighbor.

That said, we can gain insight from Fourth Amendment jurisprudence when determining whether A.W. had a reasonable expectation of privacy. In the Fourth Amendment context, to have a "legitimate" expectation of privacy, the defendant must show "'an actual or subjective expectation of privacy in the subject of the search or seizure'" and show that "'this expectation of privacy is objectively justifiable under the circumstances.'" *United States v. Nagle*, 803 F.3d 167, 176 (3d Cir. 2015); see *State v. Alexander*, 26 Kan. App. 2d 192, 197, 981 P.2d 761 (1999).

We gain additional insight from the analysis the courts use in a self-defense context. Courts use the same two-part analysis when determining whether a person has a "reasonable belief" that his or her actions are justified when asserting self-defense. A person is justified in using force against another "when and to the extent it appears to such person and such person *reasonably believes* that such use of force is necessary to defend such person or a third person against such other's imminent use of unlawful force." (Emphasis added.) K.S.A. 2019 Supp. 21-5222(a). To determine whether someone claiming self-defense reasonably believes that such force was necessary, our courts use a two-prong test. First, the court examines whether the person subjectively

8

believed use of force was necessary—did the person "sincerely and honestly believe[] it necessary." *State v. Stewart*, 243 Kan. 639, 649, 763 P.2d 572 (1988). Second, this court uses an objective standard to determine "whether a reasonable person in [like] circumstances would have perceived self-defense as necessary." 243 Kan. at 649.

We find the same two-pronged test helpful here. The questions become: (1) Did A.W. subjectively have an expectation of privacy in her bedroom with the blinds up and (2) would a reasonable person in similar circumstances have an expectation of privacy in the same location? The answers to these questions are highly fact specific.

Given a review of the facts and the video here it is not difficult to see how a rational fact-finder, when viewing the evidence in a light most favorable to the State, could have found that A.W. had a reasonable expectation of privacy in her bedroom— even though the window blinds were up.

First, A.W. subjectively had an expectation of privacy in her bedroom. She testified that she considered her home to be a private space where she could "escape from the outside world." According to A.W., if she were to stand outside her window she could not see into the house. There was substantial evidence to show that A.W., subjectively, had an expectation of privacy in her bedroom at 10 p.m. at night.

Second, this court cannot say that, objectively, A.W. did not have a reasonable expectation to privacy under the circumstances. A reasonable person in similar circumstances would have an expectation of privacy. The video was recorded outside A.W.'s bedroom in early December at around 10 p.m. The bedroom window faces a common area, but from the photographs the common area appears to be somewhere to park as opposed to an area where people typically gather, especially late at night in December. The video itself shows that some casual passerby would not have had an open view of A.W. on her bed. The bed is offset from the window, and an observer, like

9

Hayes, would need to be at an extreme angle to see the bed. And the window was not level with the ground. At its lowest point the window was elevated almost 6 feet above the ground, requiring someone to be somewhat taller than 5 feet or use an assistive device to see through the window, particularly given the angle of the video.

In sum, this was not a situation in which A.W. was walking naked in front of her picture window claiming she had an expectation to privacy. See *Kowalewski*, 2013 WL 5925967, at *3. She was in her home in a private gated community, in the privacy of her own dimly illuminated bedroom, laying on her own bed, at a common nightly bedtime, partially undressed, reading a book. The bed was not directly in front of but was offset from the window. Hayes was clearly pressed right up against the window and angling the camera toward A.W.'s bed while filming her. When viewing the evidence in a light most favorable to the State, a rational fact-finder could have found that a reasonable person in similar circumstances to A.W. would have an expectation of privacy even if the blinds of one of her windows were up. See *Chandler*, 307 Kan. at 668.

*There was sufficient evidence to conclude that Hayes used a concealed camera.*

To prove Hayes guilty of breach of privacy, the State had to prove that he "install[ed] or us[ed] a concealed camcorder, motion picture camera or photographic camera of any type." K.S.A. 2019 Supp. 21-6101(a)(6). Hayes argues that the word concealed applies to each device listed in the statute and that there was insufficient evidence to show that the iPhone used to record the video was concealed.

We need not decide Hayes' first argument—that concealed modifies each device listed—because even if it does, there was sufficient evidence to support the jury's conclusion that Hayes concealed the iPhone. Hayes argues that the evidence merely showed that Hayes concealed the act of recording, as opposed to the device used. Yet this argument is unpersuasive.

10

The statute requires that the recording device either be installed or used. Installing a camera would suggest it is secretly hidden somewhere independently to record without a person operating it. On the other hand, using a recording device would suggest that someone is actively operating it. Hayes personally recorded A.W. late at night, in an unlit area, outside A.W.'s window. It appears from the video that he held the camera in his hands. Given the nature of his activities it is safe to assume that he was concealing himself from others, somehow rising to the necessary height to record her on a winter evening at bedtime. It is clear he was not simply walking by the window. Hayes was concealed when he recorded A.W., therefore the iPhone he used was concealed as well. The statute does not require any additional concealment of the recording device. There was sufficient evidence to support the jury's conclusion that the iPhone was concealed. See *Chandler*, 307 Kan. at 668.

In sum, Hayes' arguments that there was insufficient evidence to support his conviction are unpersuasive. After viewing the evidence in a light most favorable to the State, there was sufficient evidence for a rational fact-finder to find Hayes guilty as charged.

*The district court did not erroneously admit evidence that Hayes bought a recording device designed to be unobtrusive.*

Hayes argues that the district court erred by admitting a receipt which showed that Hayes bought a video watch from SPYTEC a few weeks before this incident. He claims the evidence was irrelevant and its prejudicial effect substantially exceeded its probative value. In response, the State argues that Hayes failed to timely object, or in the alternative that the court did not admit the evidence in error. The State also argues that if Hayes timely objected and the district court erred in admitting the evidence, that the admission of the receipt was harmless.

11

*We examine our standard of review.*

Admission of evidence involves several legal considerations: determining relevance; identifying and applying legal principles including rules of evidence; and weighing prejudice against probative value. See *State v. Shadden*, 290 Kan. 803, 817-18, 235 P.3d 436 (2010). K.S.A. 60-404 generally precludes an appellate court from reviewing an evidentiary challenge absent a timely and specific objection made on the record. *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862, *cert. denied* 137 S. Ct. 310 (2016).

The erroneous admission or exclusion of evidence is subject to review for harmless error under K.S.A. 2019 Supp. 60-261. See *State v. Lowery*, 308 Kan. 1183, 1235, 427 P.3d 865 (2018). An error is harmless if there is no reasonable probability that the error affected the outcome of the trial given the entire record. 308 Kan. at 1235.

*Hayes failed to preserve this issue for appeal.*

During trial, before the court admitted the receipt into evidence but after the State showed it to her, Prigmore testified that she found a receipt "from a spy tech company for a watch camera." A short time later the State moved to admit the SPYTEC confirmation order and receipt—dated a few weeks before this incident—and Hayes objected. The receipt shows that Hayes bought a video watch, likely designed to make video recordings unobtrusively. There was no evidence that he used the video watch here. But the receipt itself, the only thing objected to, did not add any substantive information other than what Prigmore had already testified to—without objection.

"The contemporaneous-objection rule is codified in K.S.A. 60-404 and provides that a timely and specific objection to evidence at trial is required to preserve issues arising from that admission on appeal." *State v. King*, 288 Kan. 333, 341-42, 204 P.3d

12

585 (2009). Because there was no contemporaneous objection to the testimony about the purchase, Hayes has failed to preserve the issue for appellate review.

*The purchase of a watch that secretly records people was relevant to whether Hayes secretly recorded A.W.*

But even if Hayes had preserved the issue, the spy watch receipt was relevant. Relevant evidence is "evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b). This definition requires the evidence to be material and probative. Evidence is material when the fact it supports is in dispute or in issue in the case. Evidence is probative if it has any tendency to prove any material fact. *State v. Dupree*, 304 Kan. at 63-64. Granted, Hayes recorded the video in question using an iPhone and there was no evidence that the video watch related to this case. But the State had to prove that Hayes secretly videotaped A.W. without her consent. Evidence showing that Hayes had recently bought a video watch from SPYTEC conveyed his desire to engage in surreptitious behavior. Hayes' defense was that the State had failed to prove that he concealed the phone he used. We agree with the State that "[s]uch a defense is less credible in light of evidence showing that, three weeks before recording the video, defendant bought a watch that clearly could be used for purposes of secretly recording someone." And the only objection made by Hayes was to relevance.

But even if Hayes properly preserved the issue for appeal and even if the receipt were not relevant, the error was harmless.

*The admission of the watch receipt was harmless.*

After considering the record as a whole, there is no reasonable possibility that the receipt showing that Hayes bought a video watch impacted the jury's decision. Prigmore testified that she found the video of A.W. in an email account associated with Hayes. Hayes ultimately did not argue that he did not record the video. In fact, during closing

13

arguments Hayes acknowledged, perhaps somewhat disingenuously, that "at no point throughout [the] trial has the defense ever suggested that Christopher Hayes was not the person who recorded the video we saw earlier" and that to do so would "insult the jury's intelligence." Instead, Hayes' defense relied on his arguments that the State failed to prove that A.W. had a reasonable expectation of privacy—and that he did not conceal the iPhone. There is no reasonable probability that the receipt impacted the outcome of the trial given the entire record. If it was error to admit the receipt, the error was harmless. See *Lowery*, 308 Kan. at 1235.

*The district court did not erroneously admit prior bad acts evidence.*

Before trial, the State moved to admit evidence at trial that neighbors had found Hayes looking into their windows. At a pretrial hearing, the district court ruled that the evidence was admissible to show identity.

At trial, the State called Brad Long who testified that he saw Hayes looking through A.W.'s window on a different occasion than when the video was recorded. Long confronted Hayes who said that he was looking through the window because he heard a loud noise.

The State also called Emily Straub as a witness. Emily testified that she saw Hayes standing on her air conditioning unit staring into her apartment. Straub asked Hayes what he was doing, and he said that he saw a flashing light and wanted to make sure everything was all right.

Richard Straub, Emily's husband, testified that Emily told him that she saw Hayes on the air conditioner looking into their window. Richard went outside and found a lit cigarette by the air conditioner. Richard said that he had noticed cigarette butts near the air conditioner for around a week before Emily saw Hayes.

14

Before Long and the Straubs testified, the district court instructed the jury that it could only consider the testimony to be evidence of Hayes' identity. Hayes argues the district court erred by allowing the State to present evidence that neighbors had seen him looking through their windows because identity was not a disputed material fact. The State argues that Hayes failed to object properly to some of the testimony and that identity was a material fact at issue when the State offered the testimony.

*We examine our standard of review.*

In reviewing the admission of prior crimes evidence under K.S.A. 2019 Supp. 60-455, an appellate court uses a three-step test. First, the court considers whether the evidence is relevant in establishing a material fact at issue. Determining whether the prior crimes evidence is material is subject to de novo review. Second, the reviewing court must determine whether the opponent disputes the material fact and whether the material fact is relevant in proving the disputed fact. We review the district court's decision for an abuse of judicial discretion. Finally, the court must consider whether the probative value of the evidence outweighs its prejudicial effect. We also analyze this decision for an abuse of discretion. If the court admits prior crimes evidence under K.S.A. 2019 Supp. 60-455 in a jury trial, the judge must provide a limiting instruction to inform the jury of the specific purpose for which the evidence is admitted. *State v. Haygood*, 308 Kan. 1387, 1392-93, 430 P.3d 11 (2018).

A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). And finally, K.S.A. 60-404 generally precludes an appellate court from reviewing an evidentiary challenge absent a timely and specific objection made on the record. *Dupree*, 304 Kan. at 62.

15

*Hayes' objection was timely as to two witnesses.*

The State correctly points out that Hayes did not contemporaneously object to Long's testimony. By the time Hayes objected, Long had already testified that he saw Hayes standing right next to A.W.'s window and looking inside. Failure to make a contemporaneous objection is fatal to his claim of error regarding Long's testimony. See K.S.A. 60-404 (precluding an appellate court from reviewing an evidentiary challenge absent a timely and specific objection made on the record).

But Hayes did timely object to the testimony from the other two witnesses. So we will address his claim as to those two witnesses.

> *Evidence of prior bad acts was admissible to show identity because at the time of the rulings Hayes had not admitted that he was the one recording A.W.*

Hayes argues the evidence of his prior bad acts was irrelevant because identity was not a material fact at trial because he did not allege that someone else made the recording of A.W. Hayes did concede that he was the person who filmed A.W. in his closing argument. But up until that point Hayes had not informed the court that he would be conceding that he filmed A.W. During opening statements, Hayes reminded the jury that it was the State's burden to prove every element of the crime charged. The closest Hayes' counsel came to conceding identity during opening statement was when he said, "You will see a video that was found in Mr. Hayes' possession that depicts a topless lady." But that equivocation lines up directly with what the district court was considering when it ruled the evidence would be admissible. As the district court reasoned, Hayes' defense could have been that he did not use the camera, he just had possession of the video.

When Hayes objected to the testimony, he did not inform the court that he was not contesting that he was the person who recorded the video. So when the court issued its

16

ruling the identity of the videographer was still in dispute. Had Hayes changed course since the motion hearing, this would have been the time to tell the judge that he was not disputing identity any longer so the judge could reconsider his prior ruling. He did not. The court had to consider whether the evidence was relevant in establishing a material fact at issue. Identity is a material fact. *State v. Garcia*, 285 Kan. 1, 14, 169 P.3d 1069 (2007). The district court's determination that the evidence was relevant in proving a disputed material fact was not an abuse of discretion. See *Ingham*, 308 Kan. at 1469. Evidence that neighbors found Hayes looking into their homes was relevant to prove that he was the one who did so in this case as well.

Finally, the probative value of the evidence was not outweighed by its prejudicial effect. Given Hayes' final decision to concede identity in closing arguments the evidence of Hayes' prior misdeeds would not have impacted the jury's decision. Hayes relied on his argument that A.W. did not have an expectation of privacy and that he did not conceal the iPhone. The State presented substantial evidence to support the jury's decision on each of those issues—independent of the challenged evidence. The probative value of the evidence to prove identity, which at the time the State presented the evidence was still in dispute, outweighed any potential prejudice. The district court did not err by admitting evidence of Hayes' prior bad acts. See *Haygood*, 308 Kan. at 1392-93.

*Even if the evidence was not relevant, its admission was harmless given Hayes' defense theory.*

Finally, even if we were to find the admission of this evidence was in error, the error was harmless. First, Hayes' attorney told the jury that the State would present this evidence. In his opening statement to the jury he announced, "You will hear testimony about people in Mr. Hayes' neighborhood who say they saw him looking in windows." Second, there is no reasonable probability that the prior bad acts evidence affected the trial's outcome. Given how Hayes framed the issues to the jury in closing, the jury only

17

needed to determine whether it believed that A.W. had a reasonable expectation of privacy in her bedroom and whether Hayes concealed the iPhone he used. Evidence that neighbors had caught Hayes peeking into other windows would not have affected the jury addressing those issues. If the district court erred in admitting the prior bad acts evidence, which we do not believe it did, the error was harmless. See *Lowery*, 308 Kan. at 1235.

*The district court did not err by placing "guilty" above "not guilty" on the verdict form.*

Hayes argues that the district court erred by placing "guilty" above "not guilty" on the verdict form. He requested that the court place "not guilty" first, but the district court denied his request.

> "When analyzing jury instruction issues, we follow a three-step process: '(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless.' [Citation omitted.]" *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018).

Whether a party has preserved a jury instruction issue affects the appellate court's reversibility inquiry at the third step. 307 Kan. at 317. A verdict form is not a jury instruction, but it is part of the packet sent with the jury which includes the instructions. The standard of review used to analyze jury instruction issues is the same used when addressing verdict forms. *Unruh v. Purina Mills*, 289 Kan. 1185, 1197-98, 221 P.3d 1130 (2009).

In this case, the verdict form the court gave the jury placed "We, the jury, find defendant guilty of Breach of Privacy" above "We, the jury, find defendant not guilty of Breach of Privacy." Hayes argues this is inconsistent with his presumption of innocence.

But Hayes acknowledges that the Kansas Supreme Court has decided this issue in the State's favor.

Our Supreme Court held 30 years ago that the court does not encroach upon the defendant's presumption of innocence by placing the guilty option above the not guilty option on a verdict form. *State v. Wesson*, 247 Kan. 639, 652, 802 P.2d 574 (1990), *superseded by statute on other grounds*. The court reaffirmed its holding in *State v. Wilkerson*, 278 Kan. 147, 159, 91 P.3d 1181 (2004). This court is duty bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position. *Tillman v. Goodpasture*, 56 Kan. App. 2d 65, 77, 424 P.3d 540 (2018). Hayes offers no indication that the Kansas Supreme Court is departing from its holdings in *Wesson* and *Wilkerson*. The district court did not err by placing the guilty option above the not guilty option in the verdict form given to the jury.

*The district court did not err by instructing the jury that "[i]f you have no reasonable doubt . . . , you should find the defendant guilty."*

Hayes argues the district court denied his right to a jury trial by forbidding the jury from exercising its power of nullification. In support, he relies on *State v. Smith-Parker*, 301 Kan. 132, Syl. ¶ 6, 340 P.3d 485 (2014), where the Kansas Supreme Court held that it is error to instruct the jury that it "'must'" or "'will'" find the defendant guilty if the jury did not have a reasonable doubt as to the guilt of the defendant.

In *Smith-Parker*, the district court instructed the jury: "'If you do not have a reasonable doubt from all the evidence that the State has proven murder in the first degree on either or both theories, then you *will* enter a verdict of guilty.' (Emphasis added.)" 301 Kan. at 163. Smith-Parker argued the *will* should have said *should*. The Kansas Supreme Court agreed, in part, holding that the words "will" and "must" impermissibly forbid the jury from exercising its power of nullification. 301 Kan. at 164.

19

Hayes argues the word "should" is essentially the same as "must" in the context of jury instructions. He cites *State v. Lovelace*, 227 Kan. 348, 354, 607 P.2d 49 (1980), to support his argument; but the Supreme Court overruled *Lovelace* in *Smith-Parker*. *Smith-Parker*, 301 Kan. at 164.

Additionally, PIK Crim. 4th 51.010 (2017 Supp.) states: "If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you *should* find the defendant guilty." (Emphasis added.) The Supreme Court has strongly recommended that Kansas courts use the PIK instructions because the pattern instructions are designed to "'bring accuracy, clarity, and uniformity to [the] instructions.'" *State v. Butler*, 307 Kan. 831, 847, 416 P.3d 116 (2018).

Finally, this court has consistently held that the word should "'does not upset the balance between encouraging jury nullification and forbidding it.'" *State v. Green*, 55 Kan. App. 2d 595, 619, 419 P.3d 83 (2018), *rev. denied* 309 Kan. 1351 (2019). As this court has reasoned, the words must, shall, and will express a mandatory duty or obligation that the word should does not. Instead, the word should merely encourages the jury to follow the proper course of action. *State v. Allen*, 52 Kan. App. 2d 729, 735, 372 P.3d 432 (2016).

Our prior reasoning is persuasive. The district court did not err in using the PIK instruction to instruct the jury that if it had no reasonable doubt as to the truth of each claim it should find the defendant guilty.

*There was no cumulative error.*

Hayes' final argument is that even if no single error is enough to require reversal of his conviction, the cumulative effect of multiple errors deprived him of a fair trial.

20

The test is whether the totality of the circumstances establish that defendant was substantially prejudiced by cumulative errors and was denied a fair trial. In assessing the cumulative effect of errors during the trial, the appellate court examines the errors in the context of the entire record, considering how the trial judge dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014).

The court will find no cumulative error when the record fails to support the errors defendant raises on appeal. *State v. Marshall*, 303 Kan. 438, 451, 362 P.3d 587 (2015). A single error cannot support reversal under the cumulative error doctrine. *State v. Gonzalez*, 307 Kan. 575, 598, 412 P.3d 968 (2018).

Hayes' argument that cumulative error deprived him of a fair trial is not persuasive. Because we have found at most one error (admission of the SPYTEC receipt), which we found to be harmless, there can be no cumulative error which deprived Hayes of a fair trial. See *Gonzalez*, 307 Kan. at 598.

Affirmed.