NOT DESIGNATED FOR PUBLICATION

No. 122,458

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARQUISE D. BYRD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Opinion filed November 5, 2021. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., BUSER, J., and WALKER, S.J.

BUSER, J.:  Marquise D. Byrd appeals his convictions and sentence for aggravated domestic battery, endangering a child, and battery. He contends the district court erred by declining to give a lesser included offense instruction of domestic battery, declining to submit a verdict form that listed "not guilty" before the option of "guilty," and classifying a prior juvenile adjudication for aggravated burglary as a person felony in scoring his criminal history at sentencing. Finding no reversible error, we affirm the district court.

1

FACTUAL AND PROCEDURAL BACKGROUND

In March 2018, the State charged Byrd with one count of aggravated domestic battery, a severity level 7 person felony, in violation of K.S.A. 2017 Supp. 21-5414(b)(1), (c)(2). The charge resulted from allegations by his ex-girlfriend, G.T., that he had choked and beaten her repeatedly during a domestic disturbance in October 2017. Before trial, the State filed an amended information to add two charges related to H.T., G.T.'s then one-year-old son who was also involved during the incident. Those charges were endangering a child, a class A person misdemeanor, in violation of K.S.A. 2017 Supp. 21-5601(a); and battery, a class B person misdemeanor, in violation of K.S.A. 2017 Supp. 21-5413(a)(1), (g)(1).

The jury trial was held in October 2019. The State's primary witness, G.T., testified that she and Byrd were in a romantic relationship in October 2017 and had been dating for about two months. On the night of October 27, 2017, G.T.'s sister, brother, and nephew came over to her house along with Byrd. Everyone was drinking. After her family left, G.T. and Byrd began arguing about something that her brother had said.

The dispute escalated in the bedroom as Byrd repeatedly hit G.T. in the face with his closed fist. Then, according to G.T., "[he] started choking me." As described, Byrd was behind G.T. as he choked her by putting her in a headlock. This was accomplished by having G.T.'s neck right up against the interior part of Byrd's elbow. As a consequence, G.T. testified she was unable to breathe and was losing vision, and "[a]fraid, scared for my life." G.T. was able to loosen Byrd's compression on her neck but as she tried to escape Byrd wrapped his legs around her neck. With more pressure applied to that area, G.T. could not breathe and began losing her vision.

During this time, H.T. was on the floor crying. When G.T. managed to get free, she picked up H.T. and ran to the door. Byrd ran after her and ordered her back into the

2

bedroom. G.T. went with Byrd because she thought it would stop the attack. Byrd pushed her as she was walking in the hallway, causing H.T. to bump his head on the wall. G.T. said the bump caused a noticeable sound.

According to G.T., while in the bedroom, she sat on the bed. Byrd continued hitting her—while she was still holding H.T. Eventually, G.T. managed to run outside crying for help. There were people in a car across the street, who asked if she was okay. G.T. responded, "No. He's trying to kill me." As the people tried to approach, they started screaming, "He has a gun. He has a gun." But G.T. did not see Byrd with a gun. G.T. got in the car and was driven to her mother's home. She then went to the emergency room at Wesley Hospital.

G.T. told the nurses what had happened, which prompted them to call the Wichita Police Department. Officer Alli Larison arrived to speak with G.T. Initially, G.T. declined to talk with the officer but she later relented and gave a statement.

Officer Larison testified that when she first approached G.T. at the hospital, she was quiet and did not want to speak with her. Eventually, G.T. told the officer that she was at home with Byrd hanging out and watching TV in bed when he began poking her. G.T. got annoyed, which angered Byrd. He grabbed and twisted her right arm, then grabbed her hair and started hitting her head. Byrd then choked G.T. but she managed to fight him off. She tried to get up and he choked her again for a longer period, but she managed to fight him off again. After G.T. ran and grabbed H.T., Byrd pushed her against the wall causing H.T. to hit his head. Officer Larison testified she could feel a bump on the infant's head.

According to Officer Larison, G.T. said Byrd used both hands during the second choking incident and that she felt dizzy or woozy and started seeing white dots. Officer Larison testified that she observed "red and purple and blue bruising on the sides of

3

[G.T.'s] neck," and marks on her hand and arm. The officer took numerous photographs of the bruising on G.T.'s neck which were shown to the jury. Officer Larison also activated her body camera as she approached G.T. and the video recording was admitted as a State's exhibit. The officer testified that based on her training in investigating strangulation cases, G.T.'s report of feeling dizzy, woozy and having white spots in her vision were consistent with the act of strangulation that impedes blood flow and normal breathing.

Detective Javier Guete of the Wichita Police Department also testified. Detective Guete specialized in investigating domestic violence and sex crimes in October 2017. The detective called G.T. a few days after the incident to ask a few questions. G.T. told Detective Guete she had not been in contact with Byrd since the day of the incident and that she wanted to drop the charges. G.T. told the detective she "thought that situations would be worse if she continued to press charges," and "didn't want to get family involved." According to Detective Guete, G.T.'s behavior was consistent with other domestic violence cases he had investigated.

After the State rested, Byrd moved for a judgment of acquittal which the district court denied. Byrd did not present any witnesses. Following deliberations, the jury found Byrd guilty as charged. Byrd filed a motion for new trial and judgment of acquittal in November 2019. The motions were denied.

At sentencing, the district court denied Byrd's motion for departure sentences. He was sentenced to 31 months in prison upon his conviction for aggravated domestic battery. The misdemeanor convictions resulted in jail sentences which were imposed concurrent to the felony offense.

Byrd timely appealed.

Byrd contends the district court erred when it declined to instruct the jury on domestic battery under K.S.A. 2017 Supp 21-5414(a)(2), as a lesser included offense of aggravated domestic battery under K.S.A. 2017 Supp. 21-5414(b)(1). In response, the State disputes whether Byrd preserved this challenge below, but it also contends the district court properly declined to instruct on the lesser included offense. Alternatively, the State argues that any instructional error was harmless.

Before trial, Byrd submitted proposed jury instructions but did not request any lesser included offense instructions. At the jury instructions conference, Byrd asked the district court to add "a misdemeanor alternative" for the aggravated domestic battery charge. Defense counsel explained that based on the evidence "it might be feasible for a jury to believe there was some un-permitted touching on [G.T.]" that did not rise to the level of a "choking."

The State objected, asserting that only some of the elements would match to allow misdemeanor battery as a lesser included offense, specifically distinguishing "the form of contact" as an inconsistent element between the two offenses. Defense counsel countered that "the markings are slight enough that . . . it could be considered just a simple battery, and I feel like the jury could find that, so—the *misdemeanor domestic battery*, Your Honor." (Emphasis added.)

The district judge declined Byrd's request for a lesser included offense instruction, reasoning:

> "I don't believe that domestic battery or that misdemeanor domestic battery fits as a lesser included charge of aggravated domestic battery. And there has been no—without any precedent or case [c]ite proffered to the Court, I'm going to decline at this point in time to give that lesser included instruction."

5

We begin the analysis with our standards of review. When analyzing jury instruction issues, appellate courts follow a three-step process:

> "'We must first decide whether the issue has been preserved. Second, we analyze whether an error occurred. This requires a determination of whether the instruction was legally and factually appropriate. We exercise unlimited review of those questions. Next, if we find error, we conduct a 'reversibility inquiry.' [Citations omitted.]" *State v. Gentry*, 310 Kan. 715, 720, 449 P.3d 429 (2019).

With these standards in mind, we will first address the State's complaint that Byrd did not preserve the jury instruction issue for appellate review.

*Preservation*

This first question is important because whether the issue was preserved affects our reversibility inquiry at the third step of the analysis. *State v, McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018); see K.S.A. 2020 Supp. 22-3414(3) ("No party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction, unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous.").

Byrd asserts that he asked the district court to instruct the jury "on the lesser-included offense of 'domestic battery'" and "[t]hus, this issue is properly preserved for the more favorable standard of appellate review." The State counters that Byrd is now arguing that the district court should have given the specific lesser included offense instruction for domestic battery, yet his request at trial was "at best an ambiguous request for some lesser of some misdemeanor form of domestic battery or regular battery." The State notes there are two types of misdemeanor domestic battery (K.S.A. 2017 Supp. 21-5414[a][1] and K.S.A. 2017 Supp. 21-5414[a][2]) and two types of misdemeanor battery

6

(K.S.A. 2017 Supp. 21-5413[a][1] and K.S.A. 2017 Supp. 21-5413[a][2]) that Byrd could have been referring to at the instructions conference. As a result, the State asserts that Byrd did not preserve this issue for appeal because trial counsel did not state "distinctly the matter to which the party objects." K.S.A. 2020 Supp. 22-3414(3).

The State charged Byrd under K.S.A. 2017 Supp. 21-5414(b)(1), which defines the felony crime of aggravated domestic battery as:

> "Knowingly impeding the normal breathing or circulation of the blood by applying pressure on the throat, neck or chest of a person with whom the offender is involved or has been involved in a dating relationship or a family or household member, when done in a rude, insulting or angry manner."

The lesser crimes of misdemeanor domestic battery are defined under subsection (a)(1) as "[k]nowingly or recklessly *causing bodily harm* to a person with whom the offender is involved or has been involved in a dating relationship or a family or household member," or under subsection (a)(2) as "knowingly *causing physical contact* with a person with whom the offender is involved or has been involved in a dating relationship or a family or household member, when done in a rude, insulting or angry manner." (Emphases added.) K.S.A. 2017 Supp. 21-5414(a). Regardless of which subsection applies, domestic battery is a class B person misdemeanor for a first offense. See K.S.A. 2017 Supp. 21-5414(c)(1).

We are persuaded that Byrd preserved this issue for appeal. Upon our review of the colloquy between Byrd, the prosecutor, and the district court, Byrd's request, albeit initially vague, ultimately was a request for a lesser included offense instruction of misdemeanor domestic battery under K.S.A. 2017 Supp. 21-5414(a)(2)—battery by knowingly causing physical contact. Accordingly, the issue was preserved, and if the district court erred in failing to provide the jury with this lesser included instruction, our

7

reversibility analysis would require that the State bear the burden of showing there was no reasonable probability of a different outcome in light of the entire record. *State v. Plummer*, 295 Kan. 156, 162-63, 168, 283 P.3d 202 (2012); *State v. McCullough*, 293 Kan. 970, Syl. ¶ 9, 270 P.3d 1142 (2012).

The second step of the analytical framework requires our court to determine whether the instruction was legally and factually appropriate. *McLinn*, 307 Kan. at 318. Only after determining a requested instruction was legally appropriate will an appellate court proceed to consider whether the instruction was factually appropriate. *State v. Broxton*, 311 Kan. 357, 361, 461 P.3d 54 (2020).

*Legal Appropriateness*

Our court employs unlimited review to determine whether an instruction is legally appropriate. *State v. Johnson*, 304 Kan. 924, 931, 376 P.3d 70 (2016). "A legally appropriate jury instruction "'fairly and accurately state[s] the applicable law, and an instruction that does not do so [is] legally infirm."'" *Broxton*, 311 Kan. at 361. An instruction on a lesser included crime is legally appropriate. *Plummer*, 295 Kan. at 161.

In Instruction No. 7, the district court instructed the jury regarding the elements of aggravated domestic battery under K.S.A. 2017 Supp. 21-5414(b)(1):

"The defendant is charged with aggravated domestic battery. The defendant pleads not guilty. To establish this charge each of the following claims must be proved:

"1. The defendant knowingly impeded the normal breathing or circulation of the blood of [G.T.] by applying pressure on her throat, neck, or chest.
"2. The defendant committed this act in a rude, insulting, or angry manner.
"3. [G.T.] is a person with whom the defendant had been involved in a dating relationship.

8

"4. This act occurred on or between the 27th day of October, 2017, and the 28th day of October, 2017, in Sedgwick County, Kansas.

"'Dating relationship' means a social relationship of a romantic nature. You may consider the following when making a determination whether a dating relationship existed: Nature of the relationship, length of time the relationship existed, frequency of interaction between the parties and the time since the termination of the relationship, if applicable.

"The State must prove that the defendant committed the crime knowingly. A defendant acts knowingly when the defendant is aware of the circumstances in which he was acting."

Byrd contends that domestic battery under K.S.A. 2017 Supp. 21-5414(a)(2) is a lesser included offense of aggravated domestic battery under K.S.A. 2017 Supp. 21-5414(b)(1). That type of domestic battery is defined as "knowingly causing *physical contact* with a person with whom the offender is involved or has been involved in a dating relationship or a family or household member, when done in a rude, insulting or angry manner." (Emphasis added.) K.S.A. 2017 Supp. 21-5414(a)(2).

Byrd asserts that domestic battery fits within one of the statutory definitions of a lesser included offense because it is "a crime where all elements of the lesser crime are identical to some of the elements of the crime charged." K.S.A. 2020 Supp. 21-5109(b)(2). He argues that one cannot "imped[e] the normal breathing or circulation of the blood by applying pressure on the throat, neck or chest" without necessarily causing a "physical contact." K.S.A. 2017 Supp. 21-5414(a)(2), (b)(1).

Byrd's argument has merit. Our Supreme Court adopted a "strict elements test" to determine whether a lesser offense qualifies as a lesser-included offense under K.S.A. 2020 Supp. 21-5109(b)(2). As our Supreme Court has advised: "All of the elements of the lesser offense must be *identical* to some of the elements of the greater offense such

9

that if the elements of the greater crime are all established, the elements of the lesser crime are also—by necessity—all established." *State v. Toothman*, 310 Kan. 542, 552-53, 448 P.3d 1039 (2019). Applying the *Toothman* analysis, an act which impedes the normal breathing or circulation of the blood by applying pressure on the throat, neck or chest of another under K.S.A. 2017 Supp. 21-5414(b)(1) necessarily involves some form of "physical contact" as required by K.S.A. 2017 Supp. 21-5414(a)(2). The remaining elements of both crimes are identical. Thus, we conclude that domestic battery under K.S.A. 2017 Supp. 21-5414(a)(2) is a lesser included offense of aggravated domestic battery under K.S.A. 2017 Supp. 21-5414(b)(1). Accordingly, a lesser included offense instruction was legally appropriate in this case.

*Factual Appropriateness*

To determine whether an instruction is factually appropriate, our court considers whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction. *State v. Williams*, 303 Kan. 585, 598-99, 363 P.3d 1101 (2016).

As the State candidly concedes, there was sufficient evidence presented at trial to prove the elements of K.S.A. 2017 Supp. 21-5414(a)(2)—that while in a domestic relationship, Byrd had physical contact with G.T. in a rude, insulting, or angry manner.

Accordingly, after viewing the trial evidence in a light most favorable to Byrd, a lesser included offense instruction based on domestic battery under K.S.A. 2017 Supp. 21-5414(a)(2) was factually appropriate.

Given our determination that a lesser included offense instruction under K.S.A. 2017 Supp. 21-5414(a)(2) was requested by Byrd and was legally and factually

10

appropriate but was not provided to the jury, we find the district court committed an instructional error.

Upon our finding of an instructional error, we next consider whether the error is reversible or harmless. Relevant to this issue, we have previously determined that at trial Byrd requested the lesser included offense instruction for domestic battery set forth in K.S.A. 2017 Supp. 21-5414(a)(2). In this scenario, we adhere to the following analysis:

> "The standard for the reversibility inquiry depends on whether the instruction was properly requested in district court. If it was requested, the failure to offer it to the jury is grounds for reversal unless the State shows there is no reasonable probability the absence of the error would have changed the jury's verdict. [Citations omitted.]" *Gentry*, 310 Kan. at 720.

As the party benefitting from the error, the State has the burden to demonstrate there was no such probability. *McCullough*, 293 Kan. 970, Syl. ¶ 9.

Upon our review, G.T.'s testimony that her neck was compressed by Byrd's arm and legs which caused her breathing difficulties, dizziness, and vision problems was uncontroverted. Photographic evidence of neck compression in the form of red and purple and blue bruising on the sides of G.T.'s neck, corroborated this testimony. Moreover, Officer Larison testified, based on her experience and training, that G.T.'s report of feeling dizzy, woozy and having white spots impair her vision was consistent with the act of strangulation that impedes blood flow and normal breathing. In short, considerable competent evidence supported the commission of the crime of aggravated domestic battery, not simply some physical contact as in domestic battery.

Byrd attacks G.T.'s credibility, noting that the focus of his trial strategy was to undermine her credibility by identifying inconsistencies in her version of events as reported to the police compared to her testimony at trial. As a result, he asserts it is

11

probable the jury would have convicted him of domestic battery instead of aggravated domestic battery. In response, the State contends the evidence of Byrd's guilt was "overwhelming, particularly where the jury definitively found G.T. credible."

We think the State has the better argument. As the State notes, because of the jury's willingness to believe G.T.'s testimony to support the other charges—i.e., child endangerment and battery of H.T.—it stands to reason that the jury found her credible. Moreover, minor inconsistencies in G.T.'s pretrial statements did not alter her undisputed trial testimony and the corroborating evidence that she was strangled.

All things considered, we conclude there is no reasonable probability that providing the jury with the domestic battery instruction would have changed the jury's verdict. Accordingly, we hold the instructional error was harmless.

VERDICT FORMS

Before trial, when Byrd submitted his proposed jury instructions, his proffered verdict forms listed the "not guilty" option before the "guilty" option for each offense. At trial, Byrd objected to the district court's verdict forms, which listed the "guilty" option before the "not guilty" option for each offense. Still, defense counsel acknowledged that "[Pattern Instructions for Kansas (PIK)] ultimately has the order of guilty first before not guilty." Defense counsel argued that placing "guilt as the first option for that jury, kind of insinuates how they should choose." The district court declined Byrd's request, opting to follow the order as found in PIK. As a result, the verdict forms listed the "guilty" option before the "not guilty" option for each offense.

On appeal, Byrd reprises his assertion made in the district court that the verdict form should have listed the "not guilty" option before the "guilty" option. Both parties acknowledge that appellants have raised this issue numerous times previously and Kansas

12

appellate courts have rejected those challenges. However, Byrd seeks to distinguish his case by arguing that the verdict form he requested was "more correct" than the one provided by the district court.

At the outset, "[w]hile a verdict form is not technically a jury instruction, it is part of the packet sent with the jury which includes the instructions and assists the jury in reaching its verdict. It is appropriate to apply the same standard of review applicable to the review of instructions." *Unruh v. Purina Mills*, 289 Kan. 1185, 1197-98, 221 P.3d 1130 (2009).

Given Byrd's contemporaneous objection in the district court, the issue is preserved for appeal. Was the district court's decision to provide the jury with the approved PIK verdict form rather than the verdict form proffered by Byrd legally and factually appropriate? We think so.

Byrd asserts that his challenge to the verdict form implicates his constitutional right to the presumption of innocence. He claims his proffered verdict form "better protected his right to be presumed innocent." But Byrd does not favor us with any on-point legal precedent in support of his argument. And he fails to provide any other basis—logical or otherwise—to persuade us that placing the not guilty option before the guilty option on the verdict form "would subtly remind the jury that it must begin by presuming the accused innocent" and "that to move beyond the presumption of innocence, the State must have met its evidentiary burden."

On the other hand, the State correctly points out that the jury was explicitly and clearly instructed regarding the presumption of innocence and the State's burden of proof. See *State v. Butler*, 307 Kan. 831, 843, 416 P.3d 116 (2018) (Appellate courts consider jury instructions as a whole, without focusing on any single instruction to determine if

13

they properly and fairly state the applicable law.) In Instruction No. 12, the trial court instructed the jury:

> "The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty.
>
> "The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty."

Byrd asserts, without any proof, that his proffered verdict form is both subtle and more correct than the one provided by the district court. But given the forthright and definitive admonition to the jury regarding the presumption of innocence and the State's burden of proof in Instruction No. 12, we are convinced the district court's PIK-approved verdict form was appropriate. See PIK Crim. 4th 68.030 (2012 Supp.); PIK Crim 4th 68.040 (2012 Supp.); PIK Crim. 4th 68.070 (2012 Supp.). Importantly, our Supreme Court "'strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions.'" *Butler*, 307 Kan. at 847.

Both parties acknowledge that the Kansas Supreme Court approved the verdict form used in this trial long ago in *State v. Wesson*, 247 Kan. 639, 652, 802 P.2d 574 (1990), *cert. denied* 501 U.S. 1236 (1991), *disapproved of on other grounds by State v. Rogers*, 282 Kan. 218, 144 P.3d 625 (2006). In *Wesson*, our Supreme Court found there is no prejudice to a defendant when the "'guilty'" option precedes the "'not guilty'" option on the verdict form. In reaching this conclusion, the *Wesson* court explained that the presumption of innocence instruction would "cure any possibility of error." 247 Kan. at

14

652. Our Supreme Court then reaffirmed its *Wesson* holding in *State v. Wilkerson*, 278 Kan. 147, 159, 91 P.3d 1181 (2004).

Our court has rejected similar challenges, following the lead of *Wilkerson* and *Wesson*. see, e.g., *State v. Williams*, 58 Kan. App. 2d 409, 416, 471 P.3d 17 *rev. denied* 312 Kan. 901 (2020); *State v. Hayes*, 57 Kan. App. 2d 895, 910, 462 P.3d 1195, *rev. denied* 312 Kan. 896 (2020).

If there was any doubt about our Supreme Court's views regarding this verdict form issue, those doubts were definitively put to rest with the filing of *State v. Fraire*, 312 Kan. 786, 481 P.3d 129 (2021). In rejecting a similar contention as Byrd makes on appeal, our Supreme Court held:

> "Fraire makes no showing at all that the order in which the verdict form presents the options has any bearing on the likelihood of a jury reaching one verdict or the other. Realistically, jurors are probably not closely examining the verdict form before they begin their deliberations, and it is unrealistic to suggest they change their collective conclusion when the foreperson starts to fill out the form. In the absence of any showing of real prejudice, Fraire gives this court no reason to depart from *Wesson* and *Wilkerson*." *Fraire*, 312 Kan. at 796.

Our Supreme Court has approved the placement of "guilty" before "not guilty" on the verdict form for more than 30 years, and Byrd provides no legal precedent or persuasive argument to change that jurisprudential reality. We are duty-bound to follow Kansas Supreme Court precedent absent some indication our Supreme Court is departing from its previous position. See *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017).

We hold the district court did not err as a matter of law in declining Byrd's proposed verdict form and providing the jury with the verdict form approved by our Supreme Court.

CRIMINAL HISTORY SCORE

For his final issue, Byrd contends the district court erred when scoring his criminal history as a B. He challenges the classification of Entry No. 4 on his presentence investigation (PSI) report—a 2009 juvenile adjudication for aggravated burglary as a person felony. Specifically, Byrd contests the State's proffer of an adjudication journal entry in support which listed that conviction as a misdemeanor, not a felony. As a result, he seeks to vacate his sentence and remand to the district court with directions to resentence him based on a C criminal history score.

Byrd's PSI showed a criminal history score of B. Most of Byrd's prior convictions stemmed from a single juvenile case in 2009, wherein he was adjudicated for committing six counts of burglary of a motor vehicle, a nonperson felony; six counts of theft, a nonperson misdemeanor; and two counts of aggravated burglary, a person felony. Byrd also had an unscored misdemeanor conviction for possession of marijuana in 2012; a person misdemeanor conviction for domestic battery and an unscored misdemeanor conviction for criminal damage to property in 2016; an unscored misdemeanor conviction for possession of drug paraphernalia in 2018; and an unscored misdemeanor conviction for driving on a suspended license in 2019.

Before sentencing, Byrd objected to his criminal history and asserted that he had no recollection of Entry No. 4—one of the aggravated burglary adjudications from the 2009 juvenile case—being a person felony. As a result, he requested proof that the entry was indeed for a person felony. The State responded, asserting that the district court

16

could take judicial notice of its own records under K.S.A. 60-409 to prove the 2009 juvenile adjudications.

At the sentencing, the State presented journal entries related to the 2009 juvenile adjudications, which defense counsel objected to because the primary document was a "plea journal entry" not a "sentencing journal entry." Defense counsel also pointed out that the journal entry listed Entry No. 4, aggravated burglary, as a "person misdemeanor." Ultimately, the trial court denied Byrd's objection to his criminal history. The court explained that it had reviewed the journal entries and concluded that the aggravated burglary listed as Entry No. 4 would be counted as a person felony.

We begin with our standards of review. Classification of prior offenses for criminal history purposes involves statutory interpretation, which is a question of law subject to unlimited review. *State v. Wetrich*, 307 Kan. 552, 555, 412 P.3d 984 (2018). But when a defendant exercises his or her statutory right to challenge the accuracy of the convictions in the criminal history worksheet, the State bears the burden to prove by a preponderance of the evidence that the defendant committed the crime. K.S.A. 2020 Supp. 21-6814(c); *State v. Obregon*, 309 Kan. 1267, 1275, 444 P.3d 331 (2019). If the defendant challenges prior convictions from a PSI report at his sentencing hearing, the burden of proof remains on the State to prove the validity of the convictions. *State v. Hughes*, 290 Kan. 159, 171, 224 P.3d 1149 (2010).

As a result, on appeal this court reviews a trial court's finding that the State met its burden of establishing a defendant's criminal history for substantial competent evidence. *Obregon*, 309 Kan. at 1275. Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as adequate to support a conclusion. *State v. Doelz*, 309 Kan. 133, 138, 432 P.3d 669 (2019).

Byrd asserts the State failed to prove that Entry No. 4 on the PSI, which was listed as Count No. 4 on the adjudication journal entry was, in fact, a felony person crime, not a misdemeanor person crime. Byrd claimed he had no memory of that juvenile adjudication being a person felony and requested proof.

At sentencing, the State asked the trial court to take judicial notice of its files and admitted journal entries from the juvenile case which showed that, among other crimes, Byrd had plead guilty to two counts of aggravated burglary in that case. Although the adjudication journal entry listed one charge as a "Severity Level 5 person felony," the other charge—which corresponded to Entry No. 4 on the PSI—was listed as a "Severity Level 5 person *misdemeanor*." (Emphasis added.) The district court, upon its review of the journal entries, scored the second aggravated burglary adjudication as a person felony, noting that it was "uncontroverted" that Byrd had entered a guilty plea to all 14 counts in the charging document.

Byrd candidly concedes that a misdemeanor classification for aggravated burglary did not exist in 2009. See K.S.A. 2009 Supp. 21-3716 ("Aggravated burglary is a severity level 5, person felony."). Yet, based on our court's recent decision in *State v. Pollman*, 56 Kan. App. 2d 1015, 1026, 441 P.3d 511 (2019), *rev. granted* 310 Kan. 1069 (2019), for the first time on appeal, Byrd speculates that he may have pled to a nonexistent misdemeanor "as part of a bargain aimed at lessening the impact on his criminal history score."

In response, the State points out that Byrd is making this claim for the first time on appeal, since the only arguments he made below were that he did not remember pleading to a person felony and that any "confusion" should be resolved in his favor. As the State also points out, there is no record evidence of a plea bargain, let alone a plea to a non-existent crime. Finally, the State acknowledges "there was clearly a typographical error in the journal entry of plea."

We are persuaded the district court did not err in classifying Byrd's 2009 juvenile adjudication for aggravated burglary in PSI Entry No. 4 as a person felony. The journal entry memorializing Byrd's plea and adjudication hearing in juvenile court listed in Count 1, the offense of "Aggravated Burglary—K.S.A. 21-3716—Severity Level 5 person felony." In Count 4—which corresponds to Entry No. 4 in Byrd's PSI report—the offense is listed as "Aggravated Burglary—K.S.A. 21-3716—Severity Level 5 person misdemeanor." In short, Count 1 and Count 4 in the journal entry listed two identical offenses with two identical statutory references and two identical severity levels. The only difference between the two counts is that Count 4 was listed as a misdemeanor.

As Byrd concedes, however, aggravated burglary has always been classified as a person felony under Kansas law, and our court may take judicial notice of that fact. K.S.A. 60-409(a); see *State v. Humphrey*, 258 Kan. 351, 373, 905 P.2d 664 (1995), *modified on other grounds by State v. Parry*, 305 Kan. 1189, 390 P.3d 879 (2017) (rejecting similar challenge). Additionally, Kansas law has never established a severity level 5 misdemeanor. All things considered, the State's characterization of the misdemeanor reference in the journal entry as a typographical error has merit. We are convinced the district court did not err in ruling that Entry No. 4 in the PSI memorialized Byrd's adjudication for the crime of Aggravated Burglary in violation of K.S.A. 21-3716, a Severity Level 5-person felony.

We hold there was substantial competent evidence to support the trial court's ruling that Byrd had a criminal history score of B. We find no sentencing error.

Affirmed.